**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------X
**KEIRON PHILLIPS,**

                                                                **Docket No.**

                          **Plaintiff,**


            **-against-**                                            **COMPLAINT**


**THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS**
**OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL**
**AND WAYNE HAUGHTON,**

                          **Defendants.**          **JURY TRIAL IS DEMANDED**

**-**-------------------------------------------------------------------------X

        Plaintiff, **KEIRON PHILLIPS**, by and through his attorneys, the CHANDLER LAW

FIRM, PLLC, as and for his Complaint against the Defendants, states and alleges as

follows:

                          **PRELIMINARY STATEMENT**

        1.        This is a civil action seeking monetary relief, including past and ongoing

economic loss, injunctive relief, declaratory judgment, compensatory and punitive

damages, disbursements, costs and fees) for violations of the Plaintiff's rights, brought

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq. (as

amended), New York State Human Rights Executive Law §296, Breach of Contract,

Intentional Infliction of Emotional Distress, negligence and other state causes of action.

2.      Specifically, the Plaintiff KEIRON PHILLIPS alleges that the Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON together with their agents, servants and employees, purposefully and intentionally discriminated against Plaintiff based upon his gender, religious affiliation, sexual orientation, and in retaliation for having opposed discriminatory practices.    Defendants promulgated policies and directed and encouraged its agents to carry out such policies which Defendants knew to be detrimental to Plaintiff, and did wrongfully deprive Plaintiff of his employment, position, promotion, advancement and title through a pattern of discrimination, retaliation, misrepresentation, misinformation, harassment and character assassination, and fostered an environment that allowed for Plaintiff to be harassed and discriminated against. Defendants subjected Plaintiff to a hostile workplace, sought to and did fail to properly supervise its employees, and engaged in the abuse and manipulation of laws, rules, and regulations on the basis of Plaintiff's gender, sexual orientation, disability and retaliation.

**JURISDICTION AND VENUE**

3.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and §1343 and 42 U.S.C. § 2000(e).

4.      This Court is requested to exercise pendant jurisdiction with respect to

2

Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

5.      Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b), based on the fact that Plaintiff's residence and the place where the unlawful employment practices complained of is Nassau County.

6.      On or about January 23, 2019, Plaintiff served a Notice of Claim against THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON on Defendants alleging various acts of discrimination, wrongful employment actions, violation of civil rights, breach of contract, retaliation, and for other wrongful and improper acts.

7.      On or about December 19, 2019, Plaintiff KEIRON PHILLIPS properly filed a charge of discrimination, with the NEW YORK STATE DIVISION OF HUMAN RIGHTS (hereinafter referred to as "SDHR") under Charge No.: 10205799-19–E-DOI-E against Defendants THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON charging unlawful discriminatory practice relating to employment for discrimination and retaliation for opposing discriminatory practices.   More specifically, Plaintiff KEIRON PHILLIPS asserted factual allegations that the Defendants engaged in unlawful discriminatory practices in employment by denying equal terms, conditions and privileges of employment because of his gender, religious affiliation, sexual orientation, and retaliation for opposing discriminatory practices.

3

8.     On January 30, 2020, an Annulment Determination, issued by the State Division of Human Rights with regard to Charge No.: 10205799-19–E-DOI-E (copy annexed hereto) was mailed to the Plaintiff.

9.     In March 2020, New York State Governor Andrew Cuomo signed an Executive Order, which among other things tolled the Statute of Limitations for the commencement of lawsuits, filing of Notice of Claims and other specific time limits relating to notices and motions. As of this date, this Executive Order has been extended up until October 4, 2020.

## PARTIES

10.     Plaintiff, KEIRON PHILLIPS, is an African-American male citizen of the United States and a resident of New York State. Plaintiff is perceived to be homosexual.

11. At all times hereinafter mentioned, Defendant, THE ACADEMY CHARTER SCHOOL, was, and still is an independent and publicly funded school organized and existing by the Charter of THE ACADEMY CHARTER SCHOOL, and by the Charter Schools Act of 1998, Article 56 of New York Education Law. Said School exists and operates under and by virtue of the laws of the State of New York.

12. The Defendant BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL (hereinafter referred to as the "BOARD") is a self-selecting Board of Directors organized and existing by the Charter of THE ACADEMY CHARTER SCHOOL and the laws of the State of New York.

13. At all times relevant to this Complaint, Defendant SANDRA O'NEIL

4

served/serves as General Counsel, HR Director and former president of THE ACADEMY CHARTER SCHOOL. Upon information and belief, Defendant SANDRA O'NEIL is a policymaker within THE ACADEMY CHARTER SCHOOL, interacts with the BOARD and other institutional policymakers, and is charged with the duties of overseeing THE ACADEMY CHARTER SCHOOL employees and employee-management relations. Same Defendant also controls certain aspects of KEIRON PHILLIPS' compensation, terms, conditions, benefits and/or privileges of employment at THE ACADEMY CHARTER SCHOOL.

14. Defendant SANDRA O'NEIL is further charged with ensuring the implementation of, and compliance with, County, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws.

15. Defendant WAYNE HAUGHTON is an African American male, and at all times relevant to this complaint, served/serves as an Executive Director of THE ACADEMY CHARTER SCHOOL. Upon information and belief, Defendant WAYNE HAUGHTON is a policymaker within THE ACADEMY CHARTER SCHOOL, interacts with the BOARD and other institutional policymakers, and is charged with the duties of overseeing THE ACADEMY CHARTER SCHOOL employees and employee-management relations. Same Defendant also controls some aspect of KEIRON PHILLIPS' compensation, terms,

conditions, benefits and/or privileges of employment at THE ACADEMY CHARTER SCHOOL.

16. Defendant WAYNE HAUGHTON is further charged with ensuring the implementation of, and compliance with, County, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws.

17. Upon strong information and belief, while serving as Executive Director at THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL and WAYNE HAUGHTON were noticed about, and participated in, the systemic discrimination that occurred against Plaintiff and other employees not affiliated with Calvary Tabernacle, against employees that are perceived as homosexual and against employees that speak out against discrimination. THE ACADEMY CHARTER SCHOOL and the BOARD had the authority, power and capacity to end said systemic abuses, yet failed to do so.

## **FACTUAL ALLEGATIONS**

18. Plaintiff KEIRON PHILLIPS is an African-American male who has served as a employee of THE ACADEMY CHARTER SCHOOL since 2011.

19. Plaintiff was initially hired as a Math Intervention Teacher in 2011.

20. Plaintiff possesses Two Masters Degrees: one in Childhood Education from

Pace University and one in School Building Leadership from Mercy College.

21.     In 2017, Plaintiff was promoted to the position of Upper Elementary School Principal at THE ACADEMY CHARTER SCHOOL.

22.     Plaintiff was evaluated in his role as an Upper Elementary School Principal in September 2018 and received the rank of "Effective".

23.     As a part of the commendations made in Plaintiff's 2018 Evaluation, Plaintiff was said to "have worked well with [his] supervisors and the administrative team. [He has] attended most Board of Trustees meetings and [has] provided high quality written and oral reports."

24.     The Evaluation went on to further make commendations that "The school is well organized, and there is a culture of calmness among students and staff and there is a culture celebration. The environment is print rich, safe and clean. The Academic data has shown much growth in all subjects in all grades. [Plaintiff] display[s] ownership in [his] role as the building leader. [His] attendance and punctuality record is good."

25.     Defendants were all leaders in Cavalry Tabernacle, a church within the Christian denomination, located at 78 N. Franklin St., Hempstead, NY 11550. Calvary Tabernacle websites (https://cometocalvary.com/about-us/our-mission/)    under the heading of **Belief Statement reads:**

## Belief Statements

**We Believe…** The Bible, the Scriptures, both Old and New Testaments, are the inspired Word of God without error in the original writings and are the complete revelation of His will for the salvation of men, and the divine and final authority for all Christian faith and life.

**We Believe…** There is one God, Creator of all things, infinitely perfect, and eternally existing in three manifestations: Father, Son and Holy Spirit.

**We Believe…** Jesus Christ is true God and true man, having been conceived of the Holy Spirit and born of the Virgin Mary. He died on the cross, the complete and final sacrifice for our sins according to the Scriptures. Further, He arose bodily from the dead, ascended into heaven, where, at the right hand of the Majesty on High, He is now our High Priest and Advocate.

**We Believe…** The ministry of the Holy Spirit is to glorify the Lord Jesus Christ and during this age, to convict men of sin, regenerate the believing sinner, in-dwell, guide, instruct, and empower the believer for godly living and service.

**We Believe…** Man was created in the image of God but fell into sin and is therefore lost, and only through regeneration by the Holy Spirit can salvation and spiritual life be obtained.

**We Believe…** The shed blood of Jesus Christ and His resurrection provide the only ground for justification and salvation for all who believe, and only such as receive Jesus Christ by faith are born of the Holy Spirit and thus become children of God.

Most notably is the first belief statement that the Bible is the inerrant Word of God which presupposes that premarital sex, fornication, homosexuality, sodomy, or any kind homosexual sex is a sin.

26.    Upon information and belief, 95% of the members of Board and the

Executive Senior Leadership positions at THE ACADEMY CHARTER SCHOOL identify as

Conservative Christian who believe that the Bible is the inerrant Word of God and

therefore believe that Homosexuality is a sin, many of whom attend and hold leadership

positions at Calvary Tabernacle and/or are affiliated with Calvary Tabernacle.

27.     Plaintiff has never been a member of Calvary Tabernacle.

28.     Based on Plaintiff's observations, members at Calvary Tabernacle as well as Board members and Leadership at Calvary Tabernacle are given preferential treatment as it relates to staffing positions and Board positions at THE ACADEMY CHARTER SCHOOL in school and after school.

29.     Based on Plaintiff's observations, Board members and Leadership at Calvary Tabernacle are given preferential treatment as it relates to the manner in which employees are disciplined at THE ACADEMY CHARTER SCHOOL.

30.     One example of the preferential treatment is when the Head of Security (who was also a member of Calvary Tabernacle) disposed of marijuana brought onto the premises by another employee (who was also affiliated with Calvary Tabernacle), was suspended and not terminated for this clearly inappropriate and illegal conduct.

31.     During the years of Plaintiff's employment at THE ACADEMY CHARTER SCHOOL, Plaintiff received numerous requests from other employees during work hours and in the workplace for Plaintiff to attend church service and/or church events at Calvary Tabernacle and was pressured to financially support events at Calvary Tabernacle.

32.     Based on Plaintiff's observations, it was customary for the leadership at THE

ACADEMY CHARTER SCHOOL to discuss church related matters and to proselytize to employees.

33.     In fact, Defendants would refer to Cavalry Baptist Church as "the White House" in their routine conversations surrounding the church.

34.     Based on Plaintiff's observations, employees who were members of, or affiliated with, Calvary Tabernacle were treated more favorably.

35.     Some examples of this preferential treatment are when:

a)      Mr. Halloway was made the Principal of the High School without holding NY State Administrative Certification.

b)      Ms. Sharpe was given position of Administrative Assistant to the Principal without an interview and without the valid qualifications

c)      Many positions that became available were not advertised publicly and instead given to those who were members of and/or affiliated with Calvary Tabernacle

d)      Mr. Kelly was moved to three alternative work assignments after displaying unacceptable work behaviors. He would be fired and then re-hired by Defendant SANDRA O'NEIL based on his affiliation with Calvary Tabernacle.

e)      Bishop Barrington Goldson's daughter was provided a Contract to

10

run an after-school program at THE ACADEMY CHARTER SCHOOL, however, upon information and belief, she did not possess the proper qualifications.

f) The Board Chairman would "make the process easier" for candidates that applied from Calvary Tabernacle.

36. In late September of 2018, Plaintiff started to learn about gossip and rumors that had been circulated throughout the school for months regarding his sexuality and his personal relationships.

37. The nature of the gossip and rumors would support Defendants' perception that Plaintiff was homosexual as it was related to Plaintiff sleeping with another man.

38. Upon information and belief, the gossip and rumors were being spread by an employee Denzel McKenzie who at the time was a member of Calvary Tabernacle.

39. On or about October 1, 2018, Plaintiff swiftly complained to Defendant SANDRA O'NEIL in her role as Director of Human Resources and General Counsel and provided her with a complaint against Mr. McKenzie.

40. Plaintiff emphasized how inappropriate it was to have employees discussing other employee's sexual orientation and his personal relationships.

41. Plaintiff discussed his dissatisfaction with being treated differently, which

included but was not limited to being recently micromanaged, underpaid (as compared to other principals at THE ACADEMY CHARTER SCHOOL and in the Hempstead school district), and other concerns.

42.     More specifically, Principals at THE ACADEMY CHARTER SCHOOL and In the Hempstead district receive salaries ranging from $130,000 to $165,000 that he was being woefully underpaid at $105,000.

43.     Plaintiff also specifically requested that Defendant SANDRA O'NEIL immediately address the rumors and conversations about his sexual orientation and personal life that were occurring around the workplace.

44.     Despite Defendant SANDRA O'NEIL's assurances that it would be handled, employees in the workplace continued to spread rumors about Plaintiff and his perceived sexuality.

45.     Rather than properly address the issue and investigate the discussions being had related to Plaintiff's sexual orientation, Defendants started an investigation into Plaintiff and made him the subject of their religious indignation.

46.     It became clear to Plaintiff that as a result of his complaint to Defendant SANDRA O'NEIL, the perception of Plaintiff's sexual orientation was confirmed in Defendants' minds.

47.     It was also clear that the complaint made by plaintiff to Defendant

12

SANDRA O'NEIL in her official role was relayed to senior leadership in the school, which in turn caused Plaintiff to be treated differently.

48.     In fact, Dr. Stapleton told Plaintiff specifically that his allegations to Defendant SANDRA O'NEIL painted a target on his back. He started to feel isolated and like an outcast in the hallways based on the way he was being treated by other leadership and employees.

49.     Since the beginning of his employment, Plaintiff would avoid the numerous inappropriate questions and comments related to his perceived sexual orientation. Some of the questions were related to why he was not married, and some of the comments surrounded Plaintiff's propensity to masturbate and watch pornographic material. These comments were clearly defamatory and an attempt to unveil Plaintiff's sexual orientation.

50.     Plaintiff raised his concerns to Defendants about rumors surrounding Plaintiff sleeping with another man seems to have solidified what they thought they already knew, that Plaintiff was homosexual.

51.     Immediately subsequent to Plaintiff's Complaint, Defendant SANDRA O'NEIL and other Defendants refused to meet with Plaintiff to further discuss his allegations, complaint and concerns.

52.     Rather, on October 22, 2018, Plaintiff received an email from Defendants

13

confirming that they were investigating Plaintiff as it relates to allegations about Plaintiff bullying students and his evaluation of another employee from a previous year.

53.     Defendants lodged false and pre-textual allegations against Plaintiff claiming that Plaintiff was responsible for the harassment of Mr. Kelly, a member of Calvary Tabernacle.

54.     Plaintiff learned of the additional false allegations of harassment while he was out of the Country at his aunt's funeral.   He received an email on November 12, 2018 informing him that he was being placed on administrative leave for the purported harassment of Mr. Kelly.

55.     Upon information and belief, as part of the investigation into Plaintiff, the questions asked of employees seemed to be more of a "fishing expedition" rather than a legitimate investigation.

56.     During this targeted investigation, Defendants asked numerous other employees whether "they knew that Plaintiff was gay or whether they knew Plaintiff had sex with other men."

57.     On December 29, 2018, Plaintiff received a notice that he was being terminated but there was no basis for termination listed in the letter. However, upon further inquiry from Plaintiff's Counsel on January 3, 2019, it was stated by Defendants that the letter of termination was in error.

58.     Plaintiff was then officially terminated ten days later. Defendants offer of severance upon termination was vastly different from severance packages offered and/or agreed to with other employees who were not homosexual, who were affiliated with Calvary Tabernacle and who did not oppose discriminatory practices. For example, previous Principals that had been released were paid until the end of the school year however, Defendants refused to agree to this in Plaintiff's instance.

59.     At the time of his termination, Plaintiff was not informed of the reason for termination.

60.     When Plaintiff applied for unemployment benefits, Defendants informed the Department of Labor that Plaintiff was terminated for falsifying records.   Not only was this allegation categorically false and without merit, it was clearly not the same subject matter as any of the other concocted retaliatory investigations commenced against Plaintiff.

61.     The first time that Plaintiff heard of this pre-textual reason for termination was during the unemployment benefits process.

62.     Defendants continued to retaliate against Plaintiff by refusing to allow him to retrieve his personal belongings from the school.

63.     In further retaliation, Defendants refused to forward certain paperwork to the State. Plaintiff submitted the necessary paperwork to Dr. Stapleton so that Plaintiff

15

can complete the process for his administrative license.

64.     The paperwork was completed by the then Chief Academic Officer Dr. Nicholas Stapleton on December 18, 2018 but was never submitted in retaliation for Plaintiff opposing discriminatory practices.

65.     In further retaliation, Defendants refused to complete employment verification from Plaintiff's prospective after termination. This refusal was remedied only after Defendants were threatened with further legal action.

## AS AND FOR A FIRST COUNT
### Title VII, Civil Rights Act of 1964, 42 U.S.C. §2000e

66.     Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 65, inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

67.     Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON, through their agents and employees and by the conduct set forth above, discriminated against the Plaintiff in his employment, vis-a-vis unequal terms and conditions and unequal opportunities for salary and advancement, creating a hostile work environment, based on Plaintiff's gender, religious affiliation, sexual orientation and in retaliation for his opposing such discriminatory practices, in violation of Title VII of the Civil Rights Act of

16

1964, 42 U.S.C. ' 2000e, as amended.

68.     Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON, through their agents and employees and by the conduct set forth above have harassed, intimidated and retaliated because of Plaintiff's gender, religious affiliation, sexual orientation which includes but is not limited to viewing Plaintiff's sexual orientation as not consistent with acceptable gender roles, punishing Plaintiff for not affiliating with Calvary Tabernacle and retaliating against Plaintiff for speaking out and filing internal complaints and NYSDHR and EEOC Complaints.

69.     As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income, loss of pay and other employment benefits and has suffered and continues to suffer distress, humiliation, embarrassment, psychological trauma requiring professional treatment, great financial expense and damage to his reputation.

70.     As a result of Defendants' aforesaid acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys= fees together in excess of one million dollars ($1,000,000.00).

**AS AND FOR THE SECOND COUNT**
**42 U.S.C. §1983 - FOURTEENTH AMENDMENT AND FIRST AMENDMENT**

71.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1

17

through 70, inclusive of this complaint, with the same force and effect as though herein fully set forth.

72.     As set forth in detail by the above allegations, Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON together with their agents, servants and employees, acting collectively and individually, have engaged in actions and abuses, discriminatory and retaliatory conduct against Plaintiff in his employment, due to his gender, religious affiliation, sexual orientation and in retaliation for his opposing such discriminatory conduct and engaging in speech of public concern.

73.     Defendants BOARD, SANDRA O'NEIL AND WAYNE HAUGHTON committed the aforesaid unlawful acts and abuses while acting under color of law, and through the abuse of the authority and power of their individual positions within THE ACADEMY CHARTER SCHOOL.

74.     Defendants' systemic discrimination is an infringement upon and violation of Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution, and their retaliatory conduct, termination of employment, denial of employment verification and further denial of submission of certification documentation to the State after he complained about the Defendants' conduct, constituted punishment for expressing protected speech, thus further violating Plaintiff's First Amendment rights.

18

75.     Plaintiff, an African American male, who is perceived as gay and does not belong to Defendants' church, has been treated differently compared to similarly situated employees that are not perceived as gay, belong to Defendants' church and/or have chosen not to speak out against discriminatory practices, within THE ACADEMY CHARTER SCHOOL. Plaintiff has been abused and violated because of his gender, religious affiliation, and sexual orientation and in retaliation for his opposing such discriminatory practices.

76.     Defendants have consistently sought to silence persons like Plaintiff and to engage in actions and abuses, which violate and deny employees their rights as provided under the United States Constitution. Defendants have done so by conditioning employment and terms of employment on employees not speaking publicly against and opposing improper and wrongful actions by Defendants, including but not limited to actions by THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON limiting employees' First Amendment rights to free speech when they attempt to speak reason and truth about actions being taken as a concerned citizens, and as employees on matters of public concern.

77.     Defendants' infringement upon and violation of the rights, described herein including those protected under the First and Fourteenth Amendments of the

United States Constitution, was and is intended to silence Plaintiff and those like Plaintiff and to place a chilling effect upon the exercise of such rights by Plaintiff and other persons, who would raise issues about wrongful and improper actions being taken in government, departments, agencies, more including but not limited to hiring practices, disciplinary practices and other areas of public concern.   Further, Defendants have sought to and have treated employees, like and including Plaintiff, as they have in violation of their equal protection rights.

78.     By silencing, punishing, causing these persons including Plaintiff to suffer termination and other diminished aspects of their professional and personal lives. Defendants have sought to unlawfully eliminate voices, which they hired and/or appointed and thereby block, limit and deter employees including but not limited to the Plaintiff and other persons from exercising their civil, statutory and constitutional rights.

79.     Further, Defendants have sought to restrain, limit and preclude Plaintiff and other such individuals, including, but not limited to, Plaintiff, from access to government and full airing of concerns for discussion, response and action.

80.     As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation,

embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

81.     Defendants' acts have caused the Plaintiff to suffer, has resulted in the termination of his employment and the inability to advance in his career.

82.     As a result of Defendants' unlawful acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorneys' fees and punitive

damages, together in excess of ONE million dollars ($1,000,000.00).

## AS AND FOR A THIRD COUNT:
## 42 U.S.C. § 1983 – DUE PROCESS AND FIRST AMENDMENT

83.     Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 82 inclusive of this complaint, with the same force and effect as though herein fully set forth.

84.     Defendants, acting under color of law, and through their employees, servants, agents and designees, deprived Plaintiff of rights, privileges and immunities secured by the Constitution and by federal statute, in violation of 42 U.S.C. §1983.

85.     Defendants terminated Plaintiff before the expiration of Plaintiff's term without a fair and impartial hearing or any progressive discipline related to any alleged misconduct.

86.     Plaintiff has a property interest in his employment at THE ACADEMY CHARTER SCHOOL. Defendants have deprived Plaintiff of his right to employment without providing him due process to defend his property interest therein. Defendants' constitutional violations were directly and proximately caused by the Defendants' own policies, practices and/or pattern of discriminating against employees based on gender, religious affiliation, and sexual orientation and in retaliation for his opposing such discriminatory practices.

87.     Defendants, intentionally and knowingly violated Plaintiff's due process rights by terminating Plaintiff with out a hearing or any type of progressive discipline.

88.     Defendants' actions and omissions caused Plaintiff to be subjected to the deprivation of rights secured by federal law, and by the acts complained of, Defendants have caused injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

89.     As a direct and proximate result of said acts, omissions, indifference and custom and policy established by Defendants and by policymakers /decision makers, Plaintiff suffered and continues to suffer diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

90.     Defendants have consistently sought to silence persons like Plaintiff and to

engage in actions and abuses, which violate and deny employees their rights as provided under the United States Constitution. Defendants have done so by conditioning employment and terms of employment on employees not speaking publicly against and opposing improper and wrongful actions by Defendants, including but not limited to actions by THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON limiting employees' First Amendment rights to free speech when they attempt to speak reason and truth about actions being taken as a concerned citizens, and as employees on matters of public concern.

91.     Defendants' infringement upon and violation of the rights, described herein including those protected under the First, Fifth and Fourteenth Amendments of the United States Constitution, was and is intended to silence Plaintiff and those like Plaintiff and to place a chilling effect upon the exercise of such rights by Plaintiff and other persons, who would raise issues about wrongful and improper actions being taken in government, departments, agencies, more including but not limited to hiring, use of funds and other areas of public concern.   Further, Defendants have sought to and have treated employees, like and including Plaintiff, as they have in violation of their equal protection rights.

92.     By silencing, punishing, causing these persons including Plaintiff to suffer

23

termination and other diminished aspects of their professional and personal lives. Defendants have sought to unlawfully eliminate voices, which they hired and/or appointed and thereby block, limit and deter employees including but not limited to the Plaintiff and other persons from exercising their civil, statutory and constitutional rights.

93.    Further, Defendants have sought to restrain, limit and preclude Plaintiff and other such individuals, including, but not limited to, Plaintiff, from access to the government and full airing of concerns for discussion, response and action.

94.    Defendants' acts have caused the Plaintiff to suffer, has resulted in the termination of his employment and the inability to advance in his career.

95.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer, loss of income, loss of other employment benefits, diminished employment and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damage to his reputation and is entitled to, damages sustained to date and continuing in excess of one million dollars ($1,000,000.00), costs and attorneys' fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

**AS AND FOR A FOURTH COUNT**
**NYS EXECUTIVE LAW §296**
**(PENDENT STATE LAW CLAIM)**

96.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1

24

through

95, inclusive of this complaint, with the same force and effect as though herein fully set forth.

97.    Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON, together with their agents, servants and employees, acting collectively and individually, discriminated against the plaintiff in his employment, via denied opportunities for advancement, inequitable pay, hostile work environment, and unequal terms and conditions of employment, as set forth in the preceding paragraphs.

98.    The individual Defendants BOARD, SANDRA O'NEIL AND WAYNE HAUGHTON, together with their agents, servants and employees, acting collectively and individually, through the actions and conduct set forth in the preceding paragraphs, did aid and abet one another in permitting, condoning, and helping to execute the aforesaid pattern and practice, by the individual Defendants of discrimination based on gender, sexual orientation, religious affiliation and retaliation based discrimination in employment, denied advancement or job opportunities, inequitable pay, a hostile work environment, and unequal terms and conditions of employment as visited upon Plaintiff, KEIRON PHILLIPS.

99.    All of the aforementioned Defendants lacked any business reason or

justification for their aforesaid disparate treatment of Plaintiff, and instead subjected Plaintiff to the above described adverse employment actions, based on plaintiff's gender, sexual orientation, religious affiliation and in retaliation for Plaintiff's filing of Internal Complaints, charges of discrimination, opposing discrimination, and voicing speech of public concern.

100.   Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff and others perceived as gay men and/or not affiliated with Defendants' church) from 2018 through the present.

101.   Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON, through their agents and employees and by the conduct set forth above have harassed, intimidated and retaliated against Plaintiff, in violation of Title VII for opposing discriminatory practices, which include but is not limited to, Plaintiff's filing of Internal Complaints and NYSDHR and EEOC Complaints.

102.   As a direct result of said acts, Plaintiff KEIRON PHILLIPS has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress,

humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

103.    As a result of Defendants' unlawful acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, including all compensatory damages available under NYS Executive Law Section 296.

104.    The above discriminatory pattern and practice of based on gender, sexual orientation, religious affiliation and retaliation by Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON, together with their agents, servants and employees, acting collectively and individually violates New York State Human Rights Law

105.    As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within his employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

106.    Because of Plaintiff's gender, sexual orientation, religious affiliation and in retaliation, he has been subjected to abuse and mistreatment as detailed above and has been treated differently than others who are not gay men and/or not affiliated with Defendants' church.

107.    As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages

sustained to date and continuing in excess of one million dollars ($1,000,000.00).

**AS AND FOR AN FIFTH COUNT**
**BREACH OF CONTRACT**
**(PENDENT STATE CLAIM)**

108.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 107, with the same force and effect as though fully set forth herein.

109.   Defendants THE ACADEMY CHARTER SCHOOL, BOARD OF DIRECTORS OF THE ACADEMY CHARTER SCHOOL, SANDRA O'NEIL AND WAYNE HAUGHTON, extended an offer of employment to Plaintiff, which carried with it the express and implied promises that Plaintiff would be treated fairly and in good faith, and not discriminated against due to his gender, sexual orientation, religious affiliation and retaliation during the course of his employment with the Defendants.

110.   At the time of hire, Plaintiff entered into a written agreement with one-year terms. This express agreement was renewed each year, the last of which was in the summer of 2018.   This express agreement would not have expired until mid-2019. Instead, Defendants violated this agreement by terminating Plaintiff's employment prior to the expiration date of the contract because of plaintiff's gender, sexual orientation, religious affiliation and retaliation.

111.   At the time of hire, Plaintiff was induced into accepting employment with Defendants in lieu of pursuing and accepting other employment opportunities;

throughout the course of his employment, Plaintiff was further induced into continuing his employment with the Defendants, based in substantial part on the Defendants' specific promises and assurances (oral and express) that they would not discriminate against the Plaintiff, with respect to his employment conditions. Said promises and the Agreement thus constituted an implied employment contract, and created a duty of good faith and fair dealings on the part of Defendants.

112.   Defendants' implied promises/implied employment contract carried a duty to

terminate the Plaintiff only in good faith, and further carried a duty not to discriminate against Plaintiff based on his gender, sexual orientation, religious affiliation, or in retaliation for opposing discriminatory practices.

113.   The Plaintiff accepted the offer of employment with the Defendants, and relied to

his detriment on the above stated assurances, promises, and implied employment contract not to discriminate against him with respect to terms and conditions of employment or cessation of employment.

114.   The Plaintiff performed in an above satisfactory manner throughout the duration

of his employment with the Defendants.

115.   The Defendants breached their duties to the Plaintiff under the express and implied contracts when they discriminated and retaliated against the Plaintiff, failed to provide Plaintiff with proper salary, terminated Plaintiff and diminished Plaintiff's opportunities for professional advancement, based on his gender, sexual orientation and religious affiliation and his opposition to discriminatory practices.

116.   As a result of Defendants' acts, Plaintiff suffered and is entitled to a sum in excess

of one million dollars ($1,000,000.00).

**AND AS FOR A SIXTH COUNT**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(PENDENT STATE CLAIM)**

117.   Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 116, inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

118.   The Defendants knew that their conduct would cause severe and extreme emotional harm to Plaintiff.

119.   That by reason of the foregoing, Plaintiff has been placed with the same force and effect as though fully set forth herein.

120.   Defendants acted outrageously for their above-stated roles in the discrimination and retaliation against Plaintiff in terminating his employment.

121.   Said emotional harm was exacerbated by the continued discrimination and

retaliation against the Plaintiff when Defendants failed to negotiate in good faith during the termination process, initially refused to complete employee verification forms and failed to properly submit his Certification documentation to the State of New York, thereby preventing Plaintiff from advancement in his career and causing emotional damages, distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment and has been damaged in the sum of One Million ($1,000,000.00) Dollars.

**AND AS FOR A SEVENTH COUNT**
**NEGLIGENCE**
**(PENDENT STATE CLAIM)**

122.    Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 121, inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

123.    Defendants had a duty under 42 U.S.C. §1983 as well as under the First, Fifth and Fourteenth Amendments, and under New York State Law and their own rules and regulations, to prevent and cease the wrongful discrimination, retaliation, as well as a duty to investigate, supervise and discipline the Individual Defendants and prevent other wrongful acts that were committed against Plaintiff KEIRON PHILLIPS.

124.    In actively inflicting and failing to prevent the above stated abuses incurred by KEIRON PHILLIPS, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff. Said rights are guaranteed to the Plaintiff by 42 U.S.C. § 1983 and by the First, Fifth and Fourteenth Amendments of the Constitution.

125.    The breach of duty by Defendants was a direct and proximate cause of the harm suffered by Plaintiff KEIRON PHILLIPS. Said harm includes physical harm, pain and suffering

which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and loss of standing in the community, and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma distress, pain, suffering, loss of self esteem, self doubt and exposed him to disgrace, public humiliation and embarrassment was prevented from attending his work and business for a long time, was deprived of access to his family and was deprived of his constitutional rights and has been damaged in the sum of One Million ($1,000,000.00) Dollars.

## **PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a.   First Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of one million dollars ($1,000,000), pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k);

b.   Second Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of one million dollars ($1,000,000), pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k);

c.   Third Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of one million dollars ($1,000,000), pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k);

d.   Fourth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of one million dollars ($1,000,000), pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k);

e.   Fifth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of one million dollars ($1,000,000), pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k);

f.  Sixth Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of one million dollars ($1,000,000), pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k);

g.  Seventh Count: maximum monetary damages and penalties available by law, with costs, punitive damages and attorneys fees together in excess of one million dollars ($1,000,000), pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k);

h.  A declaratory judgment stating that Defendants willfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

i.  Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to allow the Plaintiff to continue in the position that he currently possesses at the proper salary scale and grade; to require the Defendants to retroactively pay all monies owed for salary differential; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

j.  An order granting such other legal and equitable relief as the court deems just and proper.


Dated: Valley Stream, New York
       October 2, 2020

                          THE CHANDLER LAW FIRM, PLLC

                          By:_____/MMC/_____
                              MONTE CHANDLER, ESQ.
                              *Attorneys for Plaintiff*
                              70 East Sunrise Highway, Suite 500
                              Valley Stream, New York 11581
                              Tel: (516) 280-8713